**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

SAI T.,

Petitioner,

v.

MARKWAYNE MULLIN, *Secretary, Department of Homeland Security*; DAVID J. VENTURELLA, *Acting Director, Immigration and Customs Enforcement*;[1] and DAVID EASTERWOOD, *Acting Director, St. Paul Field Office Immigration and Customs Enforcement*,

Respondents.

Case No. 26-cv-2542 (LMP/JFD)

**ORDER DENYING**
**HABEAS PETITION**

Daniel P. Suitor, **Daniel P. Suitor, PLLC, Minneapolis, MN**, for Petitioner.

Joshua B. Sweeney and David W. Fuller, **United States Attorney's Office, Minneapolis, MN**, for Respondents.

Petitioner Sai T. filed a petition for a writ of habeas corpus asserting that Respondents (the "Government") have unlawfully detained him pending the execution of his final order of removal. *See generally* ECF No. 1. For the reasons below, Sai T.'s petition is denied.

---

[1]    David J. Venturella is substituted in place of Todd M. Lyons pursuant to Federal Rule of Civil Procedure 25(d).

## BACKGROUND

Sai T. is a native and citizen of Laos. ECF No. 6-6 at 3. He entered the United States in 1981 as a refugee and adjusted his status to that of a lawful permanent resident in 1984. *Id.*

In 1998 the Immigration and Naturalization Service ("INS") (the predecessor of the Department of Homeland Security ("DHS")) served Sai T. with a Notice to Appear and placed him in removal proceedings. ECF No. 6-1. Sai T. was charged with removability under the Immigration and Nationality Act ("INA") based on his convictions in California for burglary and spousal abuse. ECF No. 6-1. Sai T. was released on bond, ECF No. 6 ¶ 8, but he failed to appear for an immigration hearing, ECF No. 6-2. An immigration judge conducted the hearing in absentia and ordered Sai T. removed to Laos on February 10, 1999. *Id.* Sai T. did not appeal the immigration judge's decision, ECF No. 6 ¶ 9, so his removal order became administratively final.

INS then served Sai T. a notice ordering Sai T. to surrender, but Sai T. did not surrender. *Id.* ¶¶ 10–11. INS eventually arrested Sai T. and released him on an Order of Supervision ("OSUP"). *Id.* ¶ 12.

On August 12, 2003, Sai T. failed to appear at a scheduled immigration check-in and was designated as an OSUP absconder in September 2006. *Id.* ¶¶ 13–14. On March 6, 2007, ICE encountered Sai T. at the Minnehaha County Jail in Sioux Falls, South Dakota, while Sai T. was being detained on a charge of possession of a controlled substance. *Id.* ¶ 15. ICE lodged an immigration detainer, and Sai T. was turned over to ICE custody on June 14, 2007. *Id.* ¶¶ 15–16. Sai T. was released a few weeks later on an OSUP. *Id.* ¶ 17.

On February 17, 2010, ICE encountered Sai T. at the South Dakota State Penitentiary in Springfield, South Dakota, where he was serving a 10-year sentence for a felony conviction of distribution of a controlled substance. *Id.* ¶ 18. ICE lodged an immigration detainer, and on September 7, 2011, Sai T. was turned over to ICE custody upon his release from prison. *Id.* ¶¶ 18–19. ICE again released Sai T. from custody on an OSUP (the "2011 OSUP") after determining there was not a significant likelihood of Sai T.'s removal to Laos in the reasonably foreseeable future because Laos would not issue a travel document for Sai T. *Id.* ¶ 19; *see* ECF No. 6-3. As part of the 2011 OSUP, Sai T. was to assist ICE in obtaining necessary travel documents, to make "good faith and timely efforts" to obtain travel documents, and to submit a complete application for travel documents to all appropriate Embassies or Consulates representing Laos. ECF No. 6-3 at 1–3.

On December 4, 2025, ICE submitted a request to Laos to issue a travel document for Sai T. ECF No. 6 ¶ 20. The Government of Laos issued a travel document for Sai T. on January 27, 2026, which is in ICE's possession. *Id.* ¶ 21. Having secured a travel document for Sai T., ICE issued a Notice of Revocation (the "Notice") of the 2011 OSUP on March 4, 2026, stating that Sai T.'s release "has been revoked pursuant to 8 C.F.R. § 241.13(i)" because "ICE has or is seeking a travel document to effect [his] expeditious removal to Laos." ECF No. 6-4 at 1–2.

On March 5, 2026, ICE encountered Sai T. in Sioux Falls, South Dakota, after a scheduled monthly check-in with the South Dakota Division of Parole Services, arrested Sai T. pursuant to an administrative warrant, and conducted an informal interview with

3

Sai T. so that he could respond to the reasons for revocation of the 2011 OSUP. ECF No. 6

¶¶ 23–24; *see* ECF No. 6-4 at 3–4; ECF No. 6-6 at 2–3; *see also* ECF No. 6-5. During the

interview, Sai T. offered the following statement:

> When I was in Hawaii, I was arrested by ICE and booked into detention in Oakland, CA. I paid a $5000.00 bond for which I was released from custody pending a hearing date via mail with the San Francisco immigration court for which I never received the notice of hearing. That is why I did not show up to court, because I didn't know I had court.

ECF No. 6-4 at 4. Sai T. did not express fear of return to Laos and declined to speak with

a representative from the Consulate or Embassy of Laos. ECF No. 6-6 at 4. ICE transferred

Sai T. to the Kandiyohi County Jail in Willmar, Minnesota, where he is currently detained

pending his removal to Laos. ECF No. 6 ¶ 25.

Sai T. filed a petition for a writ of habeas corpus on May 5, 2026, alleging that his

detention violates the INA, the Fourth and Fifth Amendments to the United States

Constitution, and ICE's own regulations. *See* ECF No. 1 ¶¶ 54–75. He seeks a declaration

that his detention is unlawful and his immediate release from ICE custody. *Id.* at 18–19.

## ANALYSIS

"Congress has granted federal district courts, 'within their respective jurisdictions,'

the authority to hear applications for habeas corpus by any person who claims to be held

'in custody in violation of the Constitution or laws or treaties of the United States.'"

*Rasul v. Bush*, 542 U.S. 466, 473 (2004) (quoting 28 U.S.C. § 2241(a), (c)(3)). The

protections of habeas corpus extend to those in immigration detention. *See INS v. St. Cyr*,

533 U.S. 289, 305 (2001).

The parties appear to agree that 8 U.S.C. § 1231 and its implementing regulations govern Sai T.'s detention because he is subject to a final order of removal. *See* ECF No. 5 at 7–9; ECF No. 7 at 2–3; *see also* ECF No. 1 ¶¶ 54–57. The core dispute, then, is whether ICE followed those regulations in revoking the 2011 OSUP and detaining him. *See Saengnakhone S. v. Noem*, No. 25-cv-4775 (ECT/LIB), 2026 WL 34132, at *3 (D. Minn. Jan. 6, 2026) (citing *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 265–68 (1954)) ("Agencies must follow their own regulations.").

In situations where a noncitizen has been ordered removed from the United States, but ICE determines that "there is no significant likelihood that the [noncitizen] will be removed in the reasonably foreseeable future," 8 C.F.R. § 241.13(g)(1), ICE may not detain the noncitizen indefinitely, *see Zadvydas v. Davis*, 533 U.S. 678, 699–700 (2001). Instead, the regulations require ICE to "promptly make arrangements for the release of the [noncitizen] subject to appropriate conditions," typically in the form of an OSUP. 8 C.F.R. § 241.13(g)(1). An OSUP may be revoked, and the noncitizen may be re-detained, in two circumstances: (1) if the noncitizen violates the OSUP's conditions; or (2) if circumstances change such that ICE determines the noncitizen's removal is significantly likely in the reasonably foreseeable future. *Id.* § 241.13(i)(1)–(2). In either case—an OSUP violation or changed circumstances—ICE must notify the noncitizen of the "reasons for revocation of his or her release" and "conduct an initial informal interview promptly after [the noncitizen's] return to [ICE] custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." *Id.* § 241.13(i)(3). As part of that informal interview, the noncitizen "may submit any evidence or information that he or she

believes shows there is no significant likelihood he or she [will] be removed in the reasonably foreseeable future, or that he or she has not violated" the OSUP.  *Id.*

Sai T. argues that the Government did not adhere to these procedures because: (1) the Government served the Notice on Sai T. after ICE arrested him; and (2) the Notice purportedly does not contain a sufficient explanation of the grounds for the revocation of the 2011 OSUP.  ECF No. 7 at 3–13.  The Court disagrees.

First, Sai T. "received notice" of the revocation of the 2011 OSUP "the same date as his arrest," which is appropriate under 8 C.F.R. § 241.13(i)(3).  *Somvang P. v. Sec'y, Dep't of Homeland Sec.*, No. 26-cv-0037 (PJS/EMB), 2026 WL 788853, at *2 (D. Minn. Mar. 20, 2026); *see* ECF No. 6 ¶¶ 23–24; ECF No. 6-4 at 3.  Sai T. highlights the fact that he was served the Notice 22 minutes after he was taken into ICE custody.  ECF No. 7 at 5–6 (first citing ECF No. 6-4 at 3; and then citing ECF No. 6-6 at 1).  The Court acknowledges that some of the cases from this District suggest that a notice of revocation must be served "prior to" a noncitizen's arrest.  *See, e.g.*, *Ge Y. v. Noem*, No. 26-cv-1700 (KMM/LIB), 2026 WL 800005, at *2 (D. Minn. Mar. 17, 2026), *report and recommendation adopted*, 2026 WL 803129 (D. Minn. Mar. 23, 2026); *Claudio A. A. v. Bondi*, No. 26-cv-742 (KMM/LIB), 2026 WL 468232, at *7 (D. Minn. Feb. 12, 2026), *report and recommendation adopted*, 2026 WL 478347 (D. Minn. Feb. 18, 2026).  But those cases also suggest that a notice of revocation may be properly served "at the time of [the noncitizen's] arrest."  *Claudio A. A.*, 2026 WL 468232, at *7; *see Ge Y.*, 2026 WL 800005, at *2 n.4.  Given that a mere 22 minutes passed between when ICE arrested Sai T. and

served him the Notice, the Court concludes that ICE "complied with § 241.13(i)(3)'s requirement that notice be given 'upon revocation.'" *Somvang P.*, 2026 WL 788853, at \*2.

Second, Sai T. argues that the Notice is inadequate because it "merely parrots boilerplate regulatory language that fails to provide [Sai T.] proper notice" of the changed circumstances making his removal significantly likely in the reasonably foreseeable future. ECF No. 7 at 6–7.  That is not so.  To be sure, the Notice does "parrot" some language from 8 C.F.R. § 241.13(i).  *Compare* ECF No. 6-4 at 1–2, *with* 8 C.F.R. § 241.13(i).  But the Notice goes beyond the regulation's language and provides a specific reason that ICE revoked the 2011 OSUP: "ICE has or is seeking a travel document to effect [Sai T.'s] expeditious removal to Laos."  ECF No. 6-4 at 2.  Sai T. disputes that this language provides proper notice because it "does not speak to any likelihood of Laos issuing travel documents."  ECF No. 7 at 9.  But ICE had already obtained a travel document for Sai T. more than a month earlier.  ECF No. 6 ¶ 21; *see Va V. v. Bondi*, 25-cv-2836 (LMP/JFD), ECF No. 17 at 11 (D. Minn. Aug. 11, 2025) (citations omitted) ("Laos's issuance of a travel document constitutes changed circumstances that make removal significantly more likely in the reasonably foreseeable future.").  It is semantically true that "'ICE has or is seeking a travel document' is not the same as 'ICE has obtained a travel document,'" ECF No. 7 at 9–10, but that does not mean that Sai T. was not made sufficiently aware of the reason for revocation of the 2011 OSUP.[2]

---

[2] Sai T. also suggests that ICE should have checked the box indicating that ICE "has obtained a travel document and scheduled your removal to take place no later than _____." ECF No. 7 at 9–10; *see also* ECF No. 6-4 at 2.  But that is arguably less accurate than the box ICE correctly checked.  Sai T. was given notice that, in fact, ICE had a travel document

At bottom, the regulations require that a noncitizen subject to an OSUP "be notified of the reasons for revocation" and that ICE "conduct an informal interview promptly after his or her return to [ICE] custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.13(i)(3). ICE did that here. The Notice specifically states that Sai T.'s release was revoked because ICE had secured a travel document for Sai T. and his removal to Laos was significantly likely in the reasonably foreseeable future. *See* ECF No. 6-4 at 1–2. And ICE promptly conducted an informal interview with Sai T. the same day the Notice was served "to afford [him] an opportunity to respond to the reasons for revocation." *Id.* at 3–4. Sai T. chose to respond by providing an excuse for his failure to appear at his removal hearing nearly 30 years ago *see id.* at 4, and declined to speak with a representative from the Consulate or Embassy of Laos, ECF No. 6-6 at 4. Finally, given that DHS obtained a travel document for Sai T. several months ago, ECF No. 6 ¶ 21, it appears to be significantly likely that ICE will be able to effect his removal to Laos in the reasonably foreseeable future.

For these reasons, the Court concludes that the Government has complied with the regulations governing Sai T.'s re-detention. Accordingly, Sai T.'s petition is denied.

## ORDER

Based on the foregoing, and on all the files, records, and proceedings in this matter, **IT IS HEREBY ORDERED** that:

---

to Laos. Presumably the other box was not checked because Sai T.'s removal had not been scheduled. Regardless, Sai T. was given timely and accurate notice sufficient to participate meaningfully in the initial informal interview. *See* 8 C.F.R. § 241.13(i)(3).

8

1.      Sai T.'s Petition for a Writ of Habeas Corpus (ECF No. 1) is **DENIED**; and

2.      This matter is **DISMISSED WITHOUT PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated: June 2, 2026                                  *s/Laura M. Provinzino*
                                                     Laura M. Provinzino
                                                     United States District Judge